## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

FRANK EARL MCCARRELL,     )
                                   )
            **Petitioner,**     )
                                   )
        **vs.**           )     **Case No. CIV-05-1003-W**
                                   )
JUSTIN JONES,             )
                                 )
          **Respondent.**     )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. A response to the petition has been filed, and Petitioner has filed a reply. Thus, the case is at issue. Pursuant to an order entered by United States District Judge Lee R. West, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, it is recommended that the petition be denied.

By this action, Petitioner challenges his conviction following a jury trial for possession of a controlled dangerous substance (cocaine base) after former conviction of two or more felonies, for which he was sentenced to forty years imprisonment.[1] Case No. CF-2001-6226, District Court of Oklahoma County. Petitioner filed a direct appeal, and the Oklahoma Court of Criminal Appeals affirmed. Petition, p. 2; Case No. F-2003-609, Oklahoma Court of Criminal Appeals (Summary Opinion, June 3, 2004) (attached to

---

[1]The facts regarding Petitioner's conviction and sentence are taken from the Summary Opinion, Case No. F-2003-609, Oklahoma Court of Criminal Appeals (June 3, 2004)(attached to Response as Ex. 3).

Response as Ex. 3). Thereafter, Petitioner filed an application for state post-conviction relief, and the application was denied on June 30, 2004. Petition, p. 3. Petitioner appealed, and the Oklahoma Court of Criminal Appeals affirmed on April 6, 2005. Petition, p. 4; Case No. PC-2005-60, Oklahoma Court of Criminal Appeals (Apr. 6, 2005) (Order Affirming Denial of Post-Conviction Relief) (attached to Response Ex. 5).

## I.  INTRODUCTION

On November 22, 2001, Lieutenant Elizabeth Lewis of the Oklahoma City Police Department responded to a call at the Plumtree Lounge to do a follow-up investigation on another officer's use-of-force in making an arrest.  Trial Tr. May 20, 2003, p. 15, l. 11-22. The force was used when a person uninvolved in any of the events relevant here had to be handcuffed when he interrupted several officers who had been called earlier to the Plumtree Lounge in connection with a domestic incident.  Id. at p. 16, l. 2-8.  The first object of Lt. Lewis' investigation was to speak to those who witnessed the use-of-force incident, one of whom was Petitioner. Id. at p. 17, l. 1-3.  While Lt. Lewis spoke to Petitioner, she noticed that he was extremely intoxicated; he kept swaying and had a hard time keeping on the subject of the investigation.  Id. at l. 9-15.  When she was finished speaking to him, Lt. Lewis took Petitioner to his wife who was on the other side of the parking lot and told them that they were free to go.  Id. at l. 19-23.  Lt. Lewis then turned around to the other people she needed to interview and when she was taking care of other business, she heard another officer yell at her that "they were going at it again."  Trial Tr. May 20, 2003, p. 18, l. 4-8.  Unknown to her at the time, Petitioner and his wife were the people involved in the domestic disturbance that was the original reason for the police to

2

be called to the Plumtree Lounge.  Id. at l. 8-11.  When Lt. Lewis turned around, she saw Petitioner and his wife in an SUV, with Petitioner's wife in the driver's seat.  Id. at l. 15-17.  Lt. Lewis first went to the passenger door, but then saw Petitioner's wife fumbling with her keys so she went around to the driver's side.  Id. at l. 17-24.  Petitioner's wife told Lt. Lewis that she wanted Petitioner out of the car.  Id. at l. 23-24.  Lt. Lewis told her that Petitioner was very intoxicated, and that if she took him out of the car, she would have to take him to jail for public drunk.  Id. at l. 25; p. 19, l. 1-2.  Petitioner's wife said that she did not care if he went to jail.  Id. at l. 4-5.  Petitioner would have heard both of these statements.  Id. at p. 21, l. 14-25; p. 22, l. 1-2.

Lt. Lewis then went around to the passenger side door and asked Petitioner to step out, and he leaned over and began to plead with his wife.  Trial Tr. May 20, 2003, p. 19, l. 20-22.  After Lt. Lewis asked him to step out several times, he finally got out of the car.  Id. at l. 22-24.  She took him by the elbow, and because she knew there was the possibility of a "problem," she wanted to get another officer's attention.  Id. at l. 24-25; p. 20, l. 1-2.  She got the attention of Sgt. Yust, who began to walk toward them, but as Sgt. Yust approached, Petitioner stopped and refused to move forward.  Id. at p. 20, l. 6-12; p. 42, l. 2-15.  When he came up to them, Sgt. Yust asked "is he under arrest?," and Lt. Lewis said "yes."  Id. at p. 20, l. 18-19.  As Sgt. Yust took out his handcuffs and tried to grab Petitioner's wrist, Petitioner broke Lt. Lewis' grasp on his elbow and ran.  Id. at l. 19-22; p. 22, l. 16-19; p. 43, l. 11-12.  Lt. Lewis lunged forward and grabbed his sweater shirt, but as they rounded the corner of a car, he stiff armed her and broke her grasp.  Trial Tr. May 20, 2003, p. 20, l. 22-23; p. 21, l. 1-4.  She fell and hit her head, but "bounced back up and

ran around to the other side of the car." Id. at p. 21, l. 5-6.  At the same time, Sgt. Yust was able to run up behind Petitioner and grab his right shoulder, causing him to spin around until the two were facing each other.  Id. at p. 43, l. 18-21.  Sgt. Yust then performed a leg sweep, causing Petitioner to fall down on his back.  Id. at l. 21-24; p. 21, l. 9-12.  Petitioner split his head open and was unconscious for two to three minutes.  Id. at p. 43, l. 24-25; p. 46, l. 8-10.  While Lt. Lewis and Sgt. Yust waited for an ambulance to arrive, Lt. Lewis handcuffed Petitioner while he was lying partially on his back and partially on his side.  Id. at p. 24, l. 11-14; p. 46, l. 13-15.  After he regained consciousness, Petitioner was able to move his hands from his back to his right-hand front pants pocket, pull out a plastic baggie, and throw it on the ground right next to his body.  Id. at p. 25, l. 8-25; p. 46, l. 22-25; p. 47, l. 1-10.  Sgt. Yust recovered it and found that it contained a tan cake-like substance that field tested positive for cocaine base.  Id. at p. 47, l. 14-16; p. 50, l. 4-7.  The substance was later tested by a forensic chemist with the Oklahoma City Police Department and found to be cocaine base.  Trial Tr. May 20, 2003, p. 79, l. 1-3.

## II.  STANDARD GOVERNING APPLICATIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have already been adjudicated in state court, the Court may only grant a writ of habeas corpus if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

A state court's determination is contrary to clearly established federal law where it applies a rule that contradicts the law set forth in Supreme Court cases, or  confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court's determination involves an unreasonable application of clearly established Supreme Court precedent if it identifies the correct governing legal principle from the Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Id. at 413; see also Wiggins v. Smith, 539 U.S. 510, 520 (2003).  It is not enough that the state court applied clearly established federal law erroneously or incorrectly; the application must also be unreasonable.  Williams, 529 U.S. at 410-11; Valdez v. Bravo, 373 F.3d 1093, 1096 (10th Cir.), cert. denied, 125 S.Ct. 622 (2004).

## III.  DISCUSSION

### A.  GROUND ONE – FOURTH AMENDMENT VIOLATION

As his first ground for relief, Petitioner alleges that his arrest for public intoxication violated his rights under the Fourth Amendment to the United States Constitution, entitling him to have any evidence seized during that arrest suppressed.[2]  Respondent contends that because Petitioner had a full and fair opportunity to litigate this issue in the state courts, federal habeas relief is precluded.  The undersigned agrees.

---

[2]Petitioner also alleges that the arrest violated his rights under the Oklahoma Constitution, however, this Court has no authority to grant relief on the basis of these state constitutional claims. 28 U.S.C . § 2254(a)(federal district courts have jurisdiction to entertain habeas corpus petitions only asserting that the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States"); Davis v. Reynolds, 890 F.2d 1105, 1109 n. 3 (10th Cir. 1989)("Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. §2254(a).").

Under clearly established federal law, a Fourth Amendment violation does not support federal habeas relief if the petitioner had a full and fair opportunity to litigate the issue in state court.  Stone v. Powell, 428 U.S. 465, 481-82 (1976).  The rule in Stone forecloses federal habeas relief even if the arrest and seizure of evidence violated the Petitioner's Fourth Amendment rights: "Under Stone, habeas relief shall not be granted on the ground that the trial court admitted evidence obtained in violation of the Fourth Amendment despite the judicially-created exclusionary rule, provided that the defendant had an opportunity for full and fair litigation of the Fourth Amendment claim." Smallwood v. Gibson, 191 F.3d 1257, 1265 (10th Cir. 1999) (citing Stone v. Powell, 428 U.S. 465, 481-82 (1976)). That opportunity may exist either at trial or on direct review. Stone v. Powell, 428 U.S. at 494-95 n. 37 ("we hold only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review").

As argued by Respondent, Petitioner raised the same Fourth Amendment claim contained in Ground One in the state courts.  Petitioner initially raised the issue by a pretrial motion, which was denied at the beginning of trial. Orig. R. 69-73; Trial Tr. May 19, 2003, p. 3, l. 21-22.  Petitioner also raised the issue on direct appeal, and the Oklahoma Court of Criminal Appeals affirmed:

> As to Proposition I, we find [Petitioner's] arrest for public intoxication was lawful.  In so finding, we reject [Petitioner's] argument that it is permissible to be intoxicated in a licensed public bar.  Therefore, we cannot agree that the police compelled him to commit the offense of public intoxication by escorting him from the Plumtree Lounge for an interview or thereafter ....  In addition, we reject [Petitioner's] argument that a private

> vehicle in a public parking lot is not a public place for purposes of our public intoxication statute.  We reaffirm our prior cases holding otherwise.  Therefore, we find that Officer Lewis properly investigated the disturbance in [Petitioner's] wife's car, removed him at his wife's insistence and arrested him for public intoxication.   The crack cocaine seized after [Petitioner] tossed it from his pocket following his arrest was properly admitted and was not fruit of an illegal arrest.

Response, Ex. 3, p. 2-3 (Summary Opinion, June 3, 2004) (citations omitted).  Thus, the record shows that Petitioner did have a full and fair opportunity to litigate his Fourth Amendment claim in the state courts, and that the trial and appellate court rejected the claim on the merits.  Orig. R. 69-73; Trial Tr. May 19, 2003, p. 3, l. 21-22; Summary Opinion, p. 2-3.  Accordingly, Stone precludes federal habeas relief. See, e.g., Smallwood v. Gibson, 191 F.3d 1257, 1265 (10th Cir. 1999) (affirming denial of federal habeas relief based on alleged Fourth Amendment violations because the "petitioner's appellate counsel [had] presented the issue to the [Oklahoma Court of Criminal Appeals] on direct appeal"); Chavez v. Rodriguez, 540 F.2d 500, 502 (10th Cir. 1976) (per curiam) (holding that a hearing on a motion to suppress and the consideration of the issue on appeal satisfied "[t]he dictates of Stone v. Powell"). Therefore, it is recommended that relief be denied on Ground One.

### B.  GROUND TWO – TRIAL COURT'S INSTRUCTION ON FLIGHT

Petitioner's next claim is that the trial court erred in instructing the jury to consider evidence of flight. This issue was also raised by Petitioner on direct appeal, and the Oklahoma Court of Criminal Appeals found "the evidence was sufficient[3] to warrant a

---

[3]This finding is certainly a reasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(2). Lt. Elizabeth Lewis and Sergeant Jeff Yust both testified that Petitioner attempted to escape their grasp after he knew that he was being placed under arrest.  Trial Tr. May 20, 2003, p. 20, l. 18-25; p. 21, l. 1-11, 14-19; p. 22, l. 3-10; p. 42, l. 1-18; p. 43, l. 1-25; p. 44, l. 15-

flight instruction and therefore the trial court did not err in giving one."   Summary Opinion, p. 3.

Generally, errors relating to jury instructions in a state criminal trial are not reviewable in a federal habeas corpus action "unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law."   Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)). As emphasized by the Supreme Court in Henderson v. Kibbe, 431 U.S. 145, 154 (1977), "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("The question . . . is not whether the [challenged] instruction is undesirable, erroneous, or even universally condemned, but whether the instruction so infected the trial that the resulting conviction violates due process.") (internal quotations omitted). A petitioner's burden, therefore, to establish constitutional error based on an erroneous jury instruction, is a heavy one.   Nguyen, 131 F.3d at 1357.

In Nguyen, the Tenth Circuit held that use of a flight instruction in that case did not deprive the petitioner of a fair trial.   Nguyen, 131 F.3d at 1357.   The Court stated:

> Without ultimately passing on the desirability of the challenged flight instruction, we conclude its use in this case did not so infect Nguyen's trial as to deprive him of a fair trial or due process of law. The challenged instruction informed the jury it first had to determine whether Nguyen's departure after the crime was committed constituted "flight." Only if it determined the departure constituted "flight" could it consider this as circumstantial evidence of guilt. Although the instruction could have been

---

20; p. 66, l. 8-14.  Even Petitioner conceded that he ran from the police.  Id. at p. 105, l. 1-5, 13-20; p. 112, l. 19-21.

more artfully drafted, it did not allow the jury to conclude Nguyen was guilty simply because of his departure. To the contrary, it specifically indicated that evidence of departure could be considered only if the jury drew a specific set of inferences from the departure.

Nguyen, 131 F.3d at 1357. A similar conclusion was reached in Robinson v. Gibson, No. 99-6438, 2002 WL 13158 (10th Cir. Jan. 4, 2002).[4] In that case, the Tenth Circuit stated that the "instruction did not alter the presumption that Robinson was innocent," noting that the "trial court specifically instructed the jury on that presumption and on the State's burden of proving each element of the charged offense beyond a reasonable doubt." Id. at *5. The Robinson court added: "Further, the instructions did not permit the jury to presume that Robinson was present at the scene and guilty." Id. Thus, Nguyen and Robinson found that the Oklahoma flight instruction did not violate a defendant's right to a fair trial. As in Nguyen and Robinson, the flight instruction given by the trial court in this case required the jury to first find beyond a reasonable doubt that Petitioner attempted to escape from custody with a consciousness of guilt in order to avoid arrest for the crime charged before it could consider flight as a circumstance in determining his guilt. Orig. R. 147-48. Furthermore, the jury was told that the evidence was to be considered "with all the other evidence in this case in determining the question" of Petitioner's guilt. Id. at 148. Elsewhere in the instructions, the jury had been instructed as to the presumption of innocence and the elements of the crimes[5] with which Petitioner

---

[4]This and any other unpublished disposition cited as persuasive authority pursuant to Tenth Circuit Rule 36.3.

[5]Petitioner was only charged with possession of a controlled dangerous substance with intent to distribute, but the jury was also instructed on the lesser included offense of possession of a controlled dangerous substance (cocaine base). Orig. R. 1, 134, 145. As noted above, Petitioner was found guilty of the lesser offense. Trial Tr. May 20, 2003, p. 145.

was charged, and there is nothing in the flight instruction that altered the presumption that Petitioner was innocent.  Orig. R. 134, 142, 145.

Even if the instruction on flight was improper in the constitutional sense, habeas relief would be available only if the constitutional violation "had [a] substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U. S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 ( 1946)); see also Herrera v. Lemaster, 301 F.3d 1192, 1197 (10th Cir. 2002) (en banc) (habeas court must apply harmless error analysis from Brecht in habeas proceedings).  In order to apply the Brecht harmless-error analysis, the Court must look at the sufficiency of the evidence for the limited purpose of determining the effect the error may have had on the jury's verdict.  Akins v. Boone, No. 99-7111, 2000 WL 300215, at *2  (10th Cir. Mar. 23, 2000).

The evidence against Petitioner can only be described as overwhelming, primarily due to his own concessions at trial.  Petitioner acknowledged that he had the crack cocaine that Lt. Lewis and Sgt. Yust discovered upon his arrest, having purchased it that evening for $100 from a man named "Dee" at the Plumtree Lounge.  Trial Tr. of May 20, 2003, p. 94, l. 20-25; p. 95, l. 1-5; p. 96, l. 10-25; p. 106, l. 15-22.  He admitted that he had smoked crack for many years.  Id. at p. 95, l. 6-9.  He admitted that he ran from police that night "[b]ecause I was drunk, I didn't want to go to jail," and that he thought he would be going to jail "[b]ecause the police had their hands on me."  Id. at p. 105, l. 1-5; p. 112, l. 19-21.  Lt. Elizabeth Lewis and Sergeant Jeff Yust both testified that Petitioner attempted to escape their grasp after he knew that he was being placed under arrest.  Trial Tr. May 20, 2003, p. 20, l. 18-25; p. 21, l. 1-11, 14-19; p. 22, l. 3-10; p. 42, l. 1-18; p. 43, l. 1-25; p.

44, l. 15-20; p. 66, l. 8-14. Lt. Lewis testified that she had no doubt that Petitioner heard her answer "yes" when Sgt. Yust asked her if Petitioner was under arrest. Id. at p. 22, l. 3-12. Sgt. Yust testified that Petitioner obviously heard Lt. Lewis' response, because he said "I don't want to go to jail and he began to run." Id. at p. 66, l. 8-14. And although Petitioner testified that he ran because he was drunk, Sgt. Yust testified that after Petitioner had been handcuffed and was lying on his side on the ground, he saw him reach his hand into his right front pants pocket and pull out a cellophane wrapper and throw it on the ground. Id. at p. 46, l. 11-25; p. 47, l. 1-16. The wrapper contained what turned out to be crack cocaine. Id. at p. 50, l. 4-7; p. 79, l. 1-3. Finally, Petitioner, told the jury about his prior felony convictions. Id. at p. 91, l. 19-25; p. 92, l. 1-9. In light of this evidence, any error in giving the flight instruction would have had little effect. Accordingly, it is recommended that relief be denied on Ground Two.

### C. GROUNDS THREE, FOUR AND FIVE

In Grounds Three, Four, and Five, Petitioner brings claims that were not raised on direct appeal, but were addressed for the first time in his application for state post-conviction relief. Ground Three concerns Petitioner's claim of an error relating to the sentence enhancement statute which was applied to him in the second stage of his trial. Grounds Four and Five are claims of ineffective assistance of trial and appellate counsel stemming from counsels' failure to raise the enhancement issue. Although Respondent only raises procedural default as a defense to Grounds Three and Four, Petitioner is asserting his ineffective assistance of appellate counsel claim in Ground Five as cause to

excuse the procedurally defaulted claims. Thus, as will be discussed below, the merits of all three claims must be addressed.

In Ground Three, Petitioner claims that the State failed to elect the enhancement provision under which it was going to proceed, resulting in the trial court's failure to properly instruct the jury during the sentencing phase of the trial.[6] Petitioner contends that because the jury found him guilty of the lesser included offense of possession of cocaine base, he was only subject to the enhancement provision contained within the drug possession statute – as opposed to the general enhancement provision referenced within the statute applicable to the crime of possession of cocaine base with intent to distribute. See Application for Post-Conviction Relief, p. 3 (as viewed on Oklahoma State Courts Network, Docket for Case No. CF-2001-6226, District Court of Oklahoma County, p. 11 <http://www.oscn.net/applications/oscn/GetCaseInformation.asp?number=CF-2001 -6226&db=Oklahoma&submitted=true> (accessed Nov. 16, 2005)); Compare Okla. Stat. tit. 63, § 2-402(B)(1) with Okla. Stat. tit. 63, § 2-401(D)(1) (citing Okla. Stat. tit. 21, § 51.1). In Ground Four, Petitioner alleges ineffective assistance of trial counsel for counsel's "failure to timely object to trial court's failure to correctly instruct and request prosecutor elect." Petition, p. 12. In Ground Five, Petitioner claims ineffective assistance of appellate

---

[6]This is somewhat unclear from the Petitioner's description of the claim in the habeas petition, but as supporting facts, Petitioner references his state petition for post-conviction relief and related pleadings. Fortunately, these documents can be viewed on the Oklahoma State Courts Network, as neither Petitioner nor Respondent have provided them to the Court. See Oklahoma State Courts Network, Docket for Case No. CF-2001-6226, District Court of Oklahoma County, p. 11-12 <http://www.oscn.net/applications/oscn/ GetCaseInformation.asp?number=CF-2001-6226&db= Oklahoma&submitted=true> (accessed Oct. 26, 2005). Respondent did include with the response herein the petition in error filed by Petitioner when he appealed the state district court's denial of post-conviction relief, but that provides no detail regarding the claims raised in the post-conviction application. See Response, Ex. 4.

counsel for appellate counsel's failure to "conduct adequate research and discover issues and raise it on direct appeal through no fault of petitioner's own." Id.

In ruling on these claims in Petitioner's state post-conviction application, the state district court found that the claims regarding the State's failure to elect (and the resulting effect on the jury instructions on enhancement) and ineffective assistance of trial counsel were procedurally barred, and that Petitioner had not established ineffective assistance of appellate counsel. See Findings of Fact, Conclusions of Law and Order Denying Post-Conviction Relief (as viewed on Oklahoma State Courts Network, Docket for Case No. CF-2001-6226, District Court of Oklahoma County, p. 12 <http://www.oscn.net/applications/oscn/GetCaseInformation.asp?number=CF-2001-6226&db=Oklahoma&submitted=true> (accessed Nov. 16, 2005)).  On appeal, the Oklahoma Court of Criminal Appeals affirmed the state district court's decision that Petitioner had waived any claims that could have been raised on direct appeal. Order Affirming Denial of Post-Conviction Relief, p. 3 (Apr. 6, 2005) (attached to Response at Ex. 5).  It also affirmed the state district court's decision denying Petitioner's claim of ineffective assistance of appellate counsel. Id. at 3-4.

### 1.    The Doctrine of Procedural Default

Respondent contends that federal habeas review of the claims contained in Grounds Three and Four is barred by Petitioner's failure to raise the claims on direct appeal.  On habeas review, federal courts will not review claims that have been defaulted in state courts on an independent and adequate state procedural ground unless the petitioner demonstrates cause for the default and actual prejudice, or alternatively

demonstrates a fundamental miscarriage of justice. <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 338-339 (1992); <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Hickman v. Spears</u>, 160 F.3d 1269, 1271 (10th Cir. 1998). "'A state court's finding is considered independent if it is separate and distinct from federal law.'" <u>Klein v. Neal</u>, 45 F.3d 1395, 1397 (10th Cir. 1995) (quoting <u>Brecheen v. Reynolds</u>, 41 F.3d 1343, 1353 (10th Cir. 1994)). "'A state court's finding is deemed to be adequate if it is applied evenhandedly; that is, if it is strictly or regularly followed.'" <u>Id.</u> (quoting <u>Brecheen</u>, 41 F.3d at 1353) (internal quotations omitted).

In Oklahoma, "post-conviction relief is reserved only for the rare set of circumstances where a particular claim 'could not have been raised on direct appeal.'" <u>Brecheen</u>, 41 F.3d at 1349 n. 4; <u>see</u> Okla. Stat. tit. 22, § 1086. Here, it is clear that the state courts applied this well-established procedural bar rule in denying review of Petitioner's procedurally-defaulted claims. <u>See</u> Findings of Fact, Conclusions of Law and Order Denying Post-Conviction Relief (as viewed on Oklahoma State Courts Network, Docket for Case No. CF-2001-6226, District Court of Oklahoma County, p. 12 <http://www.oscn.net/applications/oscn/GetCaseInformation.asp?number= CF-2001-6226&db=Oklahoma& submitted=true> (accessed Nov. 16, 2005)); Response, Ex. 5. The rule applied by the state district court and the Oklahoma Court of Criminal Appeals is thus independent of federal law. The Oklahoma Court of Criminal Appeals' procedural bar rule is generally an adequate state ground for refusing to review a prisoner's collateral claims that were not asserted in a direct appeal from a conviction. <u>Odum v. Boone</u>, 62 F.3d 327, 331 (10th Cir. 1995); <u>Steele v. Young</u>, 11 F.3d 1518,

1521-1522 (10th Cir. 1993).  In <u>English v. Cody</u>, 146 F.3d 1257 (10th Cir.1998), the Tenth Circuit held that a procedural rule requiring an ineffective assistance of trial counsel claim to be raised on direct appeal can be adequate only if (1) the Petitioner had different trial and appellate counsel; and (2) the ineffectiveness claim could have been resolved "upon the trial record alone" or after adequately developing a factual record through some other procedural mechanism. <u>Id.</u> at 1263-64. In this case, Petitioner did have different counsel at trial and on appeal, Petition, p. 15, and the ineffectiveness claim could have been resolved by reference to the trial record.  Thus, Oklahoma's procedural bar rule is also adequate with regard to Petitioner's claim of ineffective assistance of trial counsel.

Petitioner can overcome the procedural bar only if he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  <u>Coleman</u>, 501 U.S. at 750. "'Cause' must be 'something external to the petitioner, something that cannot fairly be attributed to him....'" <u>Steele v. Young</u>, 11 F.3d 1518, 1522 (10th Cir. 1993)(quoting <u>Coleman</u>, 501 U.S. at 753).

## 2.    Ineffective Assistance of Counsel

Petitioner contends that he did not raise the claims contained in Grounds Three and Four on direct appeal due to the ineffective assistance of appellate counsel.  Petition, p. 11-12.  He claims that his appellate counsel failed to conduct adequate research to discover the issues and raise them on appeal.  <u>Id.</u> In order to evaluate whether Petitioner's ineffective assistance of appellate counsel can constitute cause for his procedural default, it is necessary to evaluate the underlying merits of that claim, which in turn requires an

evaluation of the merits of the claim omitted from the appeal by appellate counsel. <u>See</u> <u>Hickman v. Spears,</u> 160 F.3d 1269, 1273 (10th Cir. 1998) (where procedural default was threshold issue in habeas challenge to trial counsel's failure to object to sentence enhancement, it was necessary to consider whether attorney was ineffective, which involved same inquiry as merits).

While it is true "[a] showing that a defendant received ineffective assistance of counsel will establish cause excusing a procedural default," <u>Ellis v. Hargett</u>, 302 F.3d 1182, 1186 (10th Cir. 2002), to meet this standard, Petitioner must satisfy the familiar two-part test for ineffective assistance established in <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984). Under <u>Strickland</u>, Petitioner "must establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different." <u>Hain v. Gibson</u>, 287 F.3d 1224, 1231 (10th Cir. 2002). Application of <u>Strickland</u> to an ineffective assistance of appellate counsel claim requires the Court to "look to the merits of the omitted issue." <u>Id.</u>

> [I]n analyzing an appellate ineffectiveness claim based upon the failure to raise an issue on appeal, "we look to the merits of the omitted issue," generally in relation to the other arguments counsel did pursue. If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

16

Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (quoting Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001)); accord Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir. 2004) (citations omitted), cert. denied, 125 S. Ct. 1294 (2005). Unless there is a reasonable probability that the omitted claim would have resulted in Petitioner obtaining relief on appeal, there is no ineffective assistance of appellate counsel under the Sixth Amendment. Neill, 278 F.3d at 1057 n. 5.

Before looking to the merits of the omitted claim here, it must be noted that the Oklahoma courts have already addressed Petitioner's claim of ineffective assistance of appellate counsel. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) therefore confines the Court's review to the question of whether those decisions were contrary to or involved an unreasonable application of Strickland. 28 U.S.C. § 2254(d)(1); see also Turrentine v. Mullin, 390 F.3d 1181, 1202 (10th Cir. 2004), cert. denied, 125 S. Ct. 2544 (2005).  For the reasons set forth below, the undersigned finds that there is no reasonable opportunity that inclusion of the omitted claim would have resulted in Petitioner obtaining relief on direct appeal.  Thus, the Oklahoma Court of Criminal Appeals' decision that there was nothing in the record indicating that Petitioner's representation on direct appeal was deficient was neither contrary to nor an unreasonable application of Strickland v. Washington, 466 U.S. 668, (1984).

###   3.   State's Election to Proceed Under General or Drug Offense Enhancement Provisions

Under Oklahoma law, when a defendant is charged with a violation of the drug statutes, and as a recidivist having both drug-related and non-drug related prior felony convictions, it is permissible to enhance a sentence under either the drug statutes or the general

enhancement statutes. <u>Jones v. State</u>, 789 P.2d 245, 248 (Okla. Crim. App. 1990); <u>Novey v. State</u>, 709 P.2d 696, 699 (Okla. Crim. App. 1985). However, it is not permissible to enhance a defendant's sentence by combining the provisions in both the specific and general statutes. <u>Novey</u>, at 709 P.2d 699. In his reply, Petitioner claims that a "specific statute should be used in place of a general statute under the record facts of [his] prior criminal history for two drug related offenses," citing Okla. Stat. tit. 22, § 860.1. Petitioner's Reply, p. 3. However, Oklahoma law is clear that the State may enhance under either the general or specific enhancement provisions where a defendant has both drug and non-drug prior convictions. The statute cited by Petitioner in support of his claim that the State must enhance under the more specific, drug-related enhancement provision, Okla. Stat. tit. 22, § 860.1, is the provision setting forth the bifurcated trial procedure in cases where a defendant is prosecuted for a second or subsequent offense – it has nothing to do with which sentencing enhancement statute is used in that proceeding. Here, Petitioner had both drug and non-drug prior felony convictions. <u>See</u> Trial Tr. May 20, 2003, p. 150, l. 21-25; p. 151-153; p. 154, l. 1-16.

In this case, it is clear that the State elected to proceed under the general recidivist statute, as Instruction Number 2 – given during the sentencing phase of Petitioner's trial – is based upon Instruction 10-21 of the Oklahoma Uniform Jury Instructions, Criminal, 2d, which is in turn based upon the general recidivist statutes, Okla. Stat. tit. 21, §§ 51.1, 51.1a, 51.3. Orig. R. 156-57; <u>See</u> Oklahoma Uniform Jury Instructions, Crim. 2d, 10-21. The instruction given at Petitioner's trial gives the following sentencing ranges for the crime of possession of a controlled dangerous substance (cocaine base): without any prior

18

convictions, no less than 2 years and no more than 10 years; with one conviction, not less than 4 years and no more than life in prison; with two or more previous convictions, not less than 6 years and no more than life in prison. Id. Under the more specific provision for drug-related repeat offenses, the sentencing range would have been not less than 4 and no more than 20 years. Okla. Stat. tit. 63, § 2-402(B)(1). Thus, it is clear from the instruction given that the State did make an election to sentence under the more general recidivist statute. Jones v. State, 789 P.2d 245, 248 (Okla. Crim. App. 1990) ("A review of that instruction makes it clear that the State elected to seek enhancement under the general habitual offender statute. Because such was permissible under the circumstances of this case, we hold that appellant was properly sentenced."). Moreover, even before testimony had begun the State had apparently made its election, and both Petitioner and his counsel were aware of this fact. During a hearing on various pre-trial motions, Petitioner's counsel made the following record regarding various plea negotiations that had taken place between the State and Petitioner:

> Your Honor, Mr. McCarrell prior to preliminary hearing before witnesses took the stand was offered an amended charge of simple possession and nine years to serve. I have informed Mr. McCarrell that the minimum on simple possession with two or more priors is six to life, the minimum on possession with intent to distribute with two or more priors is 15 to life, so the recommendation prior to preliminary hearing was six years below the minimum that he is charged with.

Trial Tr. May 19, 2003, p. 19, l. 17-25. Application of the standard governing claims of ineffective assistance of counsel to the law regarding the election of enhancement provisions when a defendant has both drug and non-drug prior felonies makes it clear that there was no reasonable probability that the omitted claim would have resulted in

Petitioner obtaining relief on appeal.  Thus, failure to raise the issue on direct appeal was not ineffective assistance of appellate counsel, and it is recommended that relief be denied as to Ground Five.

Moreover, ineffective assistance of appellate counsel cannot constitute cause for Petitioner's default of his Third and Fourth Grounds for relief.  Because Petitioner cannot show cause for his procedural default of Grounds Three and Four, there is no need to consider the prejudice element.  Steele v. Young, 11 F.3d 1518, 1522 n. 7 (10th Cir. 1993).  As Petitioner cannot show cause that will excuse his state court default, he must show that a fundamental miscarriage of justice will occur if the Court does not consider his defaulted claims here.  Coleman, 501 U.S. at 750.  The fundamental miscarriage of justice exception is, however, "an extremely narrow exception, implicated only in 'an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Ballinger v. Kerby, 3 F.3d 1371, 1375 (10th Cir. 1993) (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). "To prevail, [Petitioner] must identify evidence that affirmatively demonstrates his innocence." Phillips v. Ferguson, 182 F.3d 769, 774 (10th Cir. 1999). Petitioner has wholly failed to identify evidence which affirmatively demonstrates his innocence.  In fact, as set forth above, the evidence of Petitioner's guilt can only be described as overwhelming.  Accordingly, it is recommended that relief be denied on Grounds Three, Four and Five.

## **RECOMMENDATION**

For these reasons, the undersigned recommends that the petition for writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and

Recommendation with the Clerk of this Court by January 9, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Petitioner is advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.  <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 20th day of December, 2005.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE